# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LYNNE TEER PETERSON,

    *Plaintiff*,                               CASE NO. 09-CV-11222

*v.*                                           DISTRICT JUDGE GERALD E. ROSEN
                                                MAGISTRATE JUDGE CHARLES E. BINDER
COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.   RECOMMENDATION**

In light of the relevant evidence of record in this case, I suggest that substantial evidence supports the Commissioner's determination. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.   REPORT**

    **A.   Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 16.)

Plaintiff was 51 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 14, 72.) Plaintiff's relevant employment history includes work as an auto assembler for 29 years. (Tr. at 86.) Plaintiff filed the instant claim on January 9, 2006, alleging that she became unable to work on March 3, 2005. (Tr. at 72.) On April 7, 2006, Plaintiff was notified that her claim of disability based on disorders of back, discogenic and degenerative, and right rotator cuff tear, was denied at the initial administrative level. (Tr. at 66.)

On August 16, 2007, after holding a hearing on the matter, Administrative Law Judge (ALJ) Bennett Engelman determined that Plaintiff was not disabled. (Tr. at 48.) On January 25, 2008, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ "for resolution of the following issues:"

> The hearing decision, at finding #2, indicates that the claimant has not engaged in substantial gainful activity since March 3, 2005; however, there was no evaluation of the claimant's work activity after the alleged onset date of disability (March 3, 2005). The Administrative Law Judge gave the claimant the benefit of the doubt in light of her earnings record in Exhibit 2D which showed no earnings for 2006. A review of the claimant's earnings record shows that the claimant earned $19,992.44 in 2005 and $13,023.92 in 2006. The earnings query also shows earnings were reported in 2007. The claimant's work activity after the alleged onset date of disability must be evaluated.
>
> The Administrative Law Judge found that the claimant retains the residual functional capacity to perform light work (Finding #5). However, the Administrative Law Judge's conclusions regarding the claimant's residual functional capacity was not reached in accordance with 20 CFR 404.1545 and Social Security Ruling 96-8p. As indicated in Social Security Ruling 96-8p, the residual functional capacity assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in (b), (c), and (d) of 20 CFR 404.1545. Only after that may the residual functional capacity be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy.

> In this case, the Administrative Law Judge does not provide sufficient rationale with specific reference to evidence of record in support of the assessed limitations. Moreover, the file contains an assessment from the State Agency which indicates theat the claimant has some postural and manipulative limitations (Exhibit 8F). The Administrative Law Judge did not evaluate this opinion, and the hearing decision does not explain why there are no manipulative restrictions in the established residual functional capacity, as it relates to the claimant's shoulder impairment. A further evaluation is required.

(Tr. at 33-34.)

After remand, in a decision dated January 9, 2007, the ALJ found that Plaintiff was not disabled at any time through the date of his decision, because she was able to perform her past relevant work as a spark plug inspector. (Tr. at 20-21.) Plaintiff requested a review of this decision on September 17, 2008. (Tr. at 8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 28, 2009, when the Appeals Council denied Plaintiff's request for review. (Tr. at 3-5.) On April 1, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Compl., Doc. 1.)

### B.     Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted, in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative

review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *Accord Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *Accord Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility" (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.    Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

6

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v), (g).

**D.   Administrative Record**

The evidence presented to the ALJ reveals that Plaintiff sought treatment for lower back pain with Sami Al-Assmar, M.D., from February through June of 2005. (Tr. at 116-23.) The onset of Plaintiff's back pain occurred in March of 2004 after bending to sweep into a dustpan at work. (Tr. at 145, 159, 206, 281.) Plaintiff's work records indicate that her back pain resulted from a "fall." (Tr. at 182.) An MRI of the lumbar spine taken on April 4, 2005 was "unremarkable." (Tr. at 250.) Plaintiff also sought treatment for her back and shoulder pain with Kelvin Callaway, M.D.. In May of 2007, Dr. Callaway noted that Plaintiff's "back pain only hurts with activity." (Tr. at 269.)

Plaintiff's shoulder pain started in May of 2005 "while on sick leave for another problem," i.e., her back pain. (Tr. at 199, 202.) On January 24, 2006, an MRI of Plaintiff's shoulder revealed "[m]ild degenerative changes," "mild tendonitis [sic] without evidence of rotator cuff tear or retraction" and some fluid in the subacromial/subdeltoid burses [that] could represent inflammation/bursitis ... [or] mild biceps tenosynovitis." (Tr. at 229.) The MRI also showed

7

"mid/distal supraspinatus tendon tear without retraction." (Tr. at 248.)  Thus, the MRI ruled out any rotator cuff injury or tearing. (Tr. at 229-30, 248.)  Plaintiff also sought treatment for her shoulder pain with Paul M. Telehowski, M.D. (Tr. at 255-56.)  In April of 2006, Dr. Telehowski noted that Plaintiff "demonstrates full active range of motion of the right and left shoulders." (Tr. at 256.)  He further noted that Plaintiff's "left shoulder demonstrates tendonosis." (*Id.*)  Dr. Telehowski noted that he would reassess her status at "the end of summer" because Plaintiff wanted to "get into golfing and her usual summer activities" that were part of her "active lifestyle." (Tr. at 256.)  Dr. Telehowski noted that, in July 2006, Plaintiff's "shoulder has been feeling a little bit better" and "only bothers her on occasion when she sleeps on it at night." (Tr. at 255.)  Plaintiff appears to have undergone shoulder surgery with a Dr. Talahassee in early 2007. (Tr. at 270.)

Plaintiff also experienced an "abduction type injury to the MCP of the right thumb" "when 60 spark plugs she was required to lift turned and emptied, tilted unexpectedly in her hand." (Tr. at 223.)  Plaintiff was scheduled to undergo surgery Dr. Callaway for her thumb injury on January 31, 2006, but that surgery was cancelled. (Tr. at 225-27, 238.)

Plaintiff participated in physical therapy from March through June of 2005 for her back pain. (Tr. at 137-75.)  Upon discharge, the therapist noted that Plaintiff experienced "decreased difficulty with ambulation" and that her "walking has improved significantly along with decreased muscle tightness/spasms." (Tr. at 137.)  Even during therapy it was noted that Plaintiff "does not use an assistive device over even carpeted surfaces." (Tr. at 146.)  Plaintiff also participated in physical therapy for her shoulder pain from April through May of 2005 and again in November of 2005. (Tr. at 210-13, 241-45.)  Plaintiff was discharged from physical therapy for her shoulder tendinitis on December 21, 2006 for noncompliance. (Tr. at 241.)

Plaintiff indicated, on her Function Report and Daily Activity Sheet, that she watches television, cares for her personal needs and grooming but experiences difficulty pulling t-shirts over her head, cooks or buys takeout food, walks on a treadmill, attends a bible study, dusts, folds clothes and does dishes but that her husband does most of the cleaning and household chores, helps with house and yard work, drives and rides in a car, handles personal finances, volunteers, exercises "'aerobics,'" and shops at stores, through the mail and on-line. (Tr. at 93-97, 100-11.)

Dr. Callaway completed a Medical Source Statement in December of 2006 wherein he determined that Plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand for less than 2 hours in an 8-hour day, sit continuously for less than 6 hours in an 8-hour day, and was severely limited in her ability to push and pull with both right and left upper extremities. (Tr. at 257.)

A Physical Residual Functional Capacity (RFC) Assessment conducted in April of 2006 concluded that Plaintiff could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday and could push or pull without restriction. (Tr. at 232.)  The RFC assessment also concluded that Plaintiff had occasional postural limitations, was unlimited in the manipulative area except for a limited ability to reach in all directions, and was unlimited in the communicative and environmental areas. (Tr. at 233-35.)  The RFC Assessment noted that a treating source statement was on file by Dr. Woodworth which indicated Plaintiff should push or pull less than 10 pounds, should not lift over 5 pounds. (Tr. at 237.)

At the first administrative hearing held on January 9, 2007, Plaintiff testified that her past work required her to lift pans containing 200 to 250 spark plugs weighing 7 or 8 pounds. (Tr. at 287-88.)

9

At the second administrative hearing after remand held on May 1, 2008, Plaintiff testified that her past work required her to lift pans containing between 300 to 360 spark plugs weighing 20 to 25 pounds. (Tr. at 323-25.) The ALJ asked the VE to consider a person with Plaintiff's background and:

> is limited to light work with the additional limitation of allowing to change position, not necessarily at will, but be able to change positions from seated to standing. And during this period of time before her shoulder was required, let's assume that she did not – also included no work above the shoulder level.

(Tr. at 331.) The ALJ asked the Vocational Expert (VE) if there were "jobs such an individual can – could perform consistent with the Dictionary of Occupational Titles?" (Tr. at 332.) The VE responded there were a significant number of jobs in the lower peninsula and State of Michigan, such as tool clerk. (Tr. at 332.) The ALJ then allowed Plaintiff to submit additional medical records and indicated he would make his decision after examining the complete file. (Tr. at 334.)

### E.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since March 3, 2005, the alleged onset date. (Tr. at 15.) At step two, the ALJ found that Plaintiff's back pain, thumb ijury, right shoulder rotator cuff tear, and left shoulder tendinitis were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 16.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a sparkplug inspector. (Tr. at 20.) Therefore, the ALJ found Plaintiff was "not disabled." (Tr. at 20-21.)

### F.     Analysis & Conclusions

#### 1.     Return to Prior Work

10

As noted, the ALJ concluded that Plaintiff had the ability to return to her prior work. (Tr. at 20.) This finding ended the ALJ's disability inquiry because Plaintiff could not make out a prima facie showing of disability.

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

In determining the level of exertion required by prior work, the testimony of the VE should be compared to the Dictionary of Occupational Titles ("DOT"). *Bauer v. Barnhart*, 168 Fed. App'x 719 (6th Cir. 2006). Simply asking the VE if his testimony is consistent with the DOT satisfies the requirements under Social Security Regulation 00-4p. *Martin v. Comm'r of Social Security*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where

substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    **a.**     **Scope of review**

Defendant contends that the Appeals Council Order remanding the case to the ALJ is not material to this court's review of the ALJ's second decision, which became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review and that even if it were, the ALJ complied with the directive. (Doc. 16 at 17-18.) Where the Appeals Council denies request for review of an ALJ's decision, this Court reviews the decision of the ALJ rather than the findings of the Appeals Council. 20 C.F.R. § 404.981. In addition, since "the district court does not review internal agency-level proceedings, it will not address whether the ALJ complied with the specific provisions of the Appeals Council's order of remand." *Riddle v. Astrue*, No. 06-00004, 2009 WL 804056, at *19 (M.D. Tenn. Mar. 25, 2009), *citing Dyer v. Secretary of H.H.S.*, 889 F.2d 682, 684 (6th Cir. 1989); *see also Dishman v. Astrue*, No. 4:08-cv-58, 2009 WL 2823653, at *11 (E.D. Tenn. Aug. 27, 2009); *Brown v. Comm'r of Social Security*, No. 1:08CV183, 2009 WL 465708, at *6 (W.D. Mich. Feb. 24, 2009)("By failing to remand the matter a second time, it appears the Appeals Council considered the ALJ's [decision] to be in compliance with the Council's previous order of remand [] Section 405(g) does not provide this court with authority to review intermediate agency decisions that occur during the administrative review process."); *Bass v. Astrue*, No. 1:06-cv-591, 2008 WL 3413299, at *4 (M.D. N.C. Aug. 8, 2008). I therefore suggest that this court's review is limited to an analysis of the ALJ's decision and not a review of the ALJ's compliance with the Appeals Council Order of Remand.

    **b.**     **Lifting restriction**

Plaintiff contends that the ALJ's determination that Plaintiff could return to her past relevant work as a sparkplug inspector was not supported by substantial evidence. (Doc.11at 6.) Specifically, Plaintiff contends that the ALJ erroneously concluded that Plaintiff's past work did not require her to lift more than eight pounds when Plaintiff testified that the heaviest weight she was required to lift was 25 pounds. (Doc. 11 at 6; Tr. at 321-27.) Plaintiff also contends that the failure of the ALJ to credit Plaintiff's testimony that her former job required her to lift 25 pounds caused the hypothetical posed to the Vocational Expert (VE) to be in error. (Doc. 11 at 7.) The hypothetical asked the VE to consider jobs in the light unskilled category where a person is not required to lift more than 20 pounds. (*Id.*) On the other hand, Defendant contends that substantial evidence supported the ALJ's finding that Plaintiff could return to her past relevant. work. (Doc. 16 at 19-22.) Defendant notes that at the first administrative hearing, Plaintiff testified that her work involved moving pans of 200 to 250 spark plugs weighing 7 or 8 pounds. (Doc. 16 at 20-21; Tr. at 287-88.) Yet, at the second administrative hearing, Plaintiff testified that she moved pans containing 300 to 360 spark plugs weighing 20 to 25 pounds. (Doc. 16 at 12, 20; Tr. at 324.) Based on Plaintiff's own testimony, Defendant contends the ALJ's finding that Plaintiff could perform her past work and jobs involving light exertion was supported by substantial evidence. (Doc. 16 at 20.) Defendant notes that since Plaintiff has argued only that the failure to incorporate a 25 pound lifting maximum was the only flaw in the hypothetical, any other arguments are waived. (Doc. 16 at 20.)

I note that if one extrapolates from Plaintiff's testimony at the first hearing, even in a manner most beneficial to the Plaintiff, Plaintiff's testimony at the second hearing runs far afield from her prior testimony. Assuming that 200 spark plugs weigh 8 pounds, then 360 spark plugs (the maximum she indicated are ever in a pan) would weigh approximately 14 ½ pounds, a much

13

lower figure than the 20 to 25 pound number Plaintiff indicated at the second administrative hearing. (Tr. at 287-88; 323-25.) Even Dr. Callaway's Medical Source Statement found that Plaintiff could lift 10 pounds and the RFC Assessment found that Plaintiff could lift 20 pounds. (Tr. at 232, 257.) I suggest that these abilities are consistent with Plaintiff's past work and the limited range of light work the ALJ found Plaintiff could perform. I therefore find that substantial evidence is not undermined by this argument.

    **c.**     **Dr. Callaway's opinion**

Plaintiff further argues that the hypothetical was inaccurate because it failed to include restrictions supported by Plaintiff's treating physician, Dr. Callaway. (Doc. 11 at 8; Tr. at 257.) Plaintiff argues that the ALJ's reason for discounting his opinion, i.e., that the opinion conflicted with an office note by Dr. Callaway dated November 2, 2006, was in error because the office note pre-dates the restrictions outlined in Dr. Callaway's Medical Source Statement dated December 8, 2006. (Doc. 11 at 8; Tr. at 8.) Plaintiff further argues that the ALJ's analysis in the 2008 decision mimics the 2007 decision and does not show that the ALJ properly evaluated Plaintiff's residual functional capacity. (Doc. 11 at 9.) On the other hand, Defendant argues that "the ALJ appropriately discounted Dr. Callaway's opinion because it was: inconsistent with his earlier opinion; broader than his treatment of Plaintiff would suggest; incompatible with Plaintiff's treatment history and objective test results; and based almost entirely on Plaintiff's subjective complaints." (Doc. 16 at 14.) Defendant argues that although Dr. Callaway had opined that Plaintiff could not sit for more than an hour without standing or walking one month earlier, Dr. Callaway's Medical Source Statement opined that Plaintiff had severe limitations in pushing or pulling yet there was no evidence that Plaintiff's condition had significantly changed in that month. (Doc. 16 at 15; Tr. at 257-61.) Defendant further argues that the ALJ also properly discounted Dr.

14

Callaway's opinion because Dr. Callaway did not assess any difference between Plaintiff's abilities in her right and left arms and because his opinion was not supported by Plaintiff's treatment history and test results and instead appeared to be based on Plaintiff's subjective complaints. (Doc. 16 at 15-17; Tr. at 18-20, 129, 225, 250, 255-56.)

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

Dr. Callaway opined that Plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand for less than 2 hours in an 8-hour day, sit continuously for less than 6 hours in an 8-hour day, and was severely limited in her ability to push and pull with both right and left upper extremities. (Tr. at 257.) However, I suggest the ALJ properly declined to give Dr. Callway's opinion controlling weight because it was inconsistent with the other substantial evidence of record. *Wilson, supra.*

An MRI of the lumbar spine taken on April 4, 2005 was "unremarkable" and that Plaintiff's own description of her back pain to Dr. Callaway was that it "only hurts with activity." (Tr. at 250, 269.) In addition, an MRI of Plaintiff's shoulder revealed "[m]ild degenerative changes"and "mild tendonitis [sic] without evidence of rotator cuff tear or retraction" which are not consistent with the severe limitations found in Dr. Callaway's Medical Source Statement. Furthermore, Dr. Telehowski noted that Plaintiff "demonstrates full active range of motion of the right and left shoulders" and that Plaintiff wanted to "get into golfing and her usual summer activities" that were part of her "active lifestyle." (Tr. at 256.) Plaintiff also indicated to Dr. Telehowski that her shoulder "only bothers her on occasion when she sleeps on it at night." (Tr. at 255.) The medical evidence also reveals that Plaintiff was discharged from physical therapy for her shoulder tendinitis on December 21, 2006 for noncompliance. (Tr. at 241.) Finally, Plaintiff's own description of her activities undercuts Dr. Callaway's opinion. Plaintiff indicated, on her Function Report and Daily Activity Sheet, that she watches television, cares for her personal needs and grooming but experiences difficulty pulling t-shirts over her head, cooks or buys takeout food, walks on a treadmill, attends a bible study, dusts, folds clothes and does dishes but that her husband does most of the cleaning and household chores, helps with house and yard work, drives and rides in a car, handles personal finances, volunteers, exercises "'aerobics,'" and shops at stores, through the mail and on-line. (Tr. at 93-97, 100-11.) I therefore suggest that substantial evidence supports the ALJ's decision not to fully credit Dr. Callaway's opinion.

### d. SSR 00-4p

Finally, Plaintiff argues that the ALJ erred as a matter of law because he did not follow SSR 00-4p because he did not ask the VE whether his testimony conflicted with the information provided in the Dictionary of Occupational Titles (DOT). (Doc. 11 at 10.) On the other hand,

16

Defendant argues that Plaintiff's final argument is based on a flawed premise that the ALJ was required to utilize the testimony of a VE to determine whether she could perform her past relevant work at step four of the process. (Doc. 16 at 21.)  Defendant notes that the burden is on the Plaintiff to show she cannot perform her past relevant work and although a VE may be used to make such a determination, there is no requirement that an ALJ solicit the testimony of a VE at step four. (Doc. 16 at 21.)

I note at the outset that the ALJ did ask the VE whether the limited range of light work he jobs he described were "consistent with the Dictionary of Occupational Titles?" (Tr. at 332.)  I suggest that this is sufficient when Plaintiff's past relevant work was also in the range of light work.  I further suggest that any failure to precisely follow Social Security Rule 00-4p[2] would not undermine substantial evidence where, as here, Plaintiff has not alleged any conflict between the VE and the DOT.  Rule 00-4p requires the ALJ to ask the VE if the evidence conflicts with information provided in the DOT.  The Rule is titled "resolving conflicts in occupational information," and is for use "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT."  I therefore suggest that, since Plaintiff did not point to any conflict at the administrative hearing and has not alleged any unresolved conflict in the instant motion, the ALJ's failure to ask the VE whether his testimony is consistent with the DOT is not reversible error or error requiring remand.  *See Ledford v. Astrue*, 311 Fed. App'x 746, 757 (6th Cir. 2008)("Nothing in the applicable Social Security regulations requires an administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge"); *Davidson v. Astrue*, No. 08-60-DLB, 2009 WL 3161358, at *3-4 (E.D. Ky. Sept. 28,

---

[2] I note that the VE did refer to the DOT.  (Tr. at 272.)

17

2009)(unpublished)(where Plaintiff "did not bring the alleged conflict to the attention of the ALJ, the ALJ was not required to inquire further whether the vocational expert's testimony was correct"); *Rowe v. Astrue*, No. 07-348-JMH, 2008 WL 1711538, at *3 (E.D. Ky. Apr. 10, 2008) (unpublished) (where hypothetical accurately reflected plaintiff's limitations and ALJ was unaware of any conflict, ALJ was under no duty to explain how conflict was resolved); *Winstead v. Comm'r*, No., 2008 WL 819073, at *15-16 (S.D. Ohio Mar. 25, 2008) (unpublished) (where question posed to VE accurately reflected the plaintiff's limitations, the plaintiff's contention that the ALJ erred in failing to inquire into possible conflicts was without merit).

  **e.**  **Conclusion**

  I suggest that the ALJ's findings also follow the opinions of the vocational expert which came in response to detailed and proper hypothetical questions that accurately portrayed plaintiff's individual impairments in harmony with the relevant objective record medical evidence. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). I therefore conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

**III.**  <u>**REVIEW**</u>

  Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See*

18

*also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

                         s/ *Charles E Binder*
                         CHARLES E. BINDER
Dated: December 21, 2009          United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System.

Date: December 21, 2009          By     s/Patricia T. Morris
                                       Law Clerk to Magistrate Judge Binder